**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**BETTY RICHARDSON**                                                                                     **PLAINTIFF**

**VS.**                              **CASE NO. 3:11CV00127 HDY**

**MICHAEL J. ASTRUE, Commissioner,**
    **Social Security Administration**                                                       **DEFENDANT**

**ORDER**

Plaintiff has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for supplemental security income (SSI). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g).

This Court's review function is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." *Id*. The Court may not reverse merely because evidence would have supported a contrary outcome. *See id*.

The only disputed issue in this case is whether plaintiff is disabled within the meaning of the Social Security Act. Plaintiff bears the burden of establishing a physical or mental impairment that will result in death, or that has lasted twelve months or more and has prevented her from engaging in any substantial gainful activity. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 1382c(3)(A) and (B).

Plaintiff filed for SSI on November 17, 2008, alleging she had been disabled since July 1, 2007. Her application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge (ALJ).

Plaintiff was 46 years old at the time of the hearing, which was conducted on March 25, 2010. (Tr. 20-36). The plaintiff, who graduated from high school after taking special ed classes, testified at the hearing. A vocational expert witness also testified. The plaintiff testified that she had worked running a shirt press in the past, a job that required little lifting but a great deal of standing and bending. (Tr. 24). She also worked as a cook at a country club, a job which required her to bend and pick up boxes weighing more that 50 pounds. (Tr. 25). She worked as a cook at another job, then worked in 2008 at American Grading, a factory job[1], which she left because of a heart problem, according to the plaintiff. (Tr. 26). The heart problem requires her to rest and take ibuprofen, and she describes some days as good and "some days I feel real bad." (Tr. 26). The plaintiff testified that she has a driver's license and a vehicle, and lives with her husband. Her daily activities include cleaning and cooking when she feels good, but she stated that some days she does not do anything. Upon questioning by her attorney, the plaintiff stated that her heart problem causes her to break out in a sweat and get dizzy, and she must sit down to deal with the symptoms. These episodes occur about twice a week, according to the plaintiff. (Tr. 28). The plaintiff said she had swelling in her left leg throughout her life, which she treats with ibuprofen, rubbing alcohol, and elevating the leg. (Tr. 28). The leg problems occur about twice a day, according to her testimony. (Tr. 28). The plaintiff stated that she experiences occasional tiredness from anemia, and she fell and

---

[1] The plaintiff stated she could not keep up with the production quota at the factory, and left the job because her heart problems required her to slow down on the job. (Tr. 33).

tore ligaments in her knee, which has affected her range of motion. The plaintiff allowed that she could stand for about one and a half to two hours during a work day, and that she could sit for one hour. (Tr. 30). When asked what she would do during the remaining five hours in a work day, the plaintiff said, "I don't know. Whatever they asked me to do, if I could do it, I'd do it." (Tr. 31). When doing housework, the plaintiff stated she works for 35-40 minutes, then rests for an hour. She estimated she could life about a pound. (Tr. 31). She also estimated she would miss two weeks in a month if employed due to heart problems. (Tr. 32). The vocational expert described the plaintiff's past relevant work as light, semi-skilled (shirt-presser), medium, skilled (restaurant cook), and light, unskilled (hand packager). The ALJ inquired if an individual like the plaintiff who was experiencing mild to moderate pain could perform her past relevant work, and the answer was in the negative. The vocational expert testified that other jobs, such as textile and garment worker, could be performed by such an individual. (Tr. 34). The ALJ posed a second hypothetical question to the vocational expert, adding the following limitations: lift five pounds occasionally, lift five pounds frequently, sit three hours and stand and/or walk one hour in a work day, and a lack of concentration so that the person could not complete the required tasks of a job. The vocational expert opined that such a person could not perform any jobs. (Tr. 35). On questioning by the plaintiff's attorney, the vocational expert stated that an individual could not perform the textile and garment worker job if the person needed to have her legs elevated due to obesity and swelling, or if the person could not maintain an acceptable pace of production. (Tr. 35-36).

On May 19, 2010, the ALJ found the plaintiff was not disabled as defined in the Social Security Act. (Tr. 9-16). The ALJ specifically found the medical evidence established the plaintiff has the following severe impairments: cellulitis, anemia, joint pain, and back pain. The ALJ found

the plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found the plaintiff has the residual functional capacity to perform the full range of sedentary work. In reaching this conclusion, the ALJ analyzed and discounted the subjective allegations of the plaintiff. The ALJ determined the plaintiff could not perform any of her past relevant work. Using the Medical-Vocational Guidelines, the ALJ found the plaintiff was not disabled. The Appeals Council, on June 18, 2011, denied plaintiff's request for review (Tr. 1-3), and plaintiff subsequently filed suit with this Court.

The ALJ considered her impairments by way of the familiar five-step sequential evaluation process.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b). If the claimant is, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether the claimant has a severe impairment or combination of impairments. *Id.*, § 404.1520©); *see* 20 C.F.R. § 404.1526. If not, benefits are denied; if so, the evaluation proceeds to the next step.

Step three involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(d). If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id.*, § 404.1520(e). If so, benefits are denied; if not, the evaluation continues.

Step five involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given claimant's age, education and work experience. *Id.*, § 404.1520(f). If so, benefits are denied; if not, benefits are awarded.

In support of her request for reversal, plaintiff asserts that the ALJ erred by: (1) failing to obtain physical and mental consultative examinations; (2) failing to find the plaintiff's obesity was a severe impairment; and (3) relying upon the Medical-Vocational Guidelines. *Plaintiff's brief at 12-15.*

The plaintiff first argues that the ALJ erred by failing to obtain physical and mental consultative examinations. The following exchange occurred at the outset of the administrative hearing:

> PLAINTIFF'S ATTORNEY: Your Honor, first of all we need to amend the onset date. We request that the onset be amended to November 17th of 2008. We would also request that Ms. Lattimore [Richardson] be sent for a consult's exam. I'm not sure why – most of these cases they send them for one, but in this particular they didn't, and due to finances there's not a whole lot of medical, so I think it would probably be appropriate to have one done in this case.
>
> ALJ: All right. I'll take your request under advisement.

(Tr. 22-23).

It is true that the plaintiff did not offer a large volume of medical records in support of her claim. The plaintiff was seen in July of 2007 at St. Bernard's Medical Center emergency room for syncope. She was admitted on July 11 and discharged on July 13 with instructions to follow up with family doctor for syncope. Numerous tests were conducted during her stay, and the plaintiff's

history of alcohol and marijuana abuse was noted, she was instructed on smoking cessation, and the etiology of her syncope was ultimately found to be unknown. (Tr. 186). The plaintiff next presented to another emergency room, SMC Regional Medical Center in Osceola, in May of 2008 after being struck by a vehicle. She complained of left knee pain but an x-ray was normal. (Tr. 260, 262). It appears that the plaintiff arrived at the emergency room shortly after 11 p.m., she was examined with generally normal findings (a heart arrhythmia was noted), an x-ray was taken before midnight, and she was discharged at 1:40 a.m. (Tr. 249-250). In November of 2008, the plaintiff presented to NEA Baptist Hospital emergency room in Jonesboro complaining of swelling in her left leg. (Tr. 283). She was admitted on November 14 and discharged on November 17. The primary diagnosis was cellulitis, with a secondary diagnosis of anemia. She was "markedly improved" on discharge, having taken antibiotics for the leg swelling. The discharge summary also noted that her anemia was stable on discharge, and there was a note that the Hematology department would be asked to see her in a clinic setting to evaluate the anemia. (Tr. 285).

The plaintiff contends the ALJ, who was clearly aware of her request for consultative examinations, erred in failing to direct that such examinations occur. In particular, the plaintiff argues the ALJ should have required a mental evaluation since the plaintiff graduated from high school after taking special education classes. First, with regard to the general claim that the ALJ should have directed that consultative examination occur, we are mindful that the plaintiff bears the burden of proving disability. *Lochner v. Sullivan*, 968 F.2d 725 (8th Cir. 1992). In this instance, the medical records, though sparse, shed light on the allegations advanced by the plaintiff. In summary, the medical records show that the plaintiff received treatment when she sought it. In addition, there would be more medical records had the plaintiff complied with the directives of the medical care

providers who suggested she receive follow up care.

Second, regarding the allegation that mental consultative examinations should have been ordered, the medical record shows the plaintiff neither sought nor received any mental health care. Significantly, the plaintiff did not allege any mental impairments in her application for disability benefits, nor did she testify to any mental impairments at the administrative hearing. (Tr. 130). Under the circumstances, it would have been odd for an ALJ to seek mental health information. The plaintiff's work history shows that she worked for years without any mental issues. (Tr. 102-103). This ability to perform the past work does not support the notion of significant mental impairments, and does not support the notion that the ALJ should have been alert to expanding the record on this issue, as alleged by the plaintiff.

In summary, this case is similar to *Pena v. Chater*, 76 F.3d 906 (8th Cir. 1996), where the plaintiff complained the ALJ erred in failing to fully and fairly develop the evidence of the plaintiff's depression.

> However, Pena did not allege depression in his disability application, and he did not mention the condition during his testimony. The administrative law judge is under no 'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.' *Brockman v. Sullivan*, 987 F.2d 1344, 1348 (8th Cir. 1993).

76 F.3d at 909.

Under the circumstances of this case, we find no error in the ALJ relying upon the record as it existed, and find no merit in the claim that the ALJ should have further developed the record.

The second claim for relief advanced by the plaintiff is ALJ error in failing to find the plaintiff's obesity was a severe impairment. As with mental impairments, we note that the plaintiff neither alleged obesity as a disabling impairment in her application nor testified to such at the

7

administrative hearing. The plaintiff argues that her obesity is a nonexertional impairment and there is a possibility that it "could limit even her ability to sit." The flaw with this argument is the absence of any medical evidence to support her claim that her obesity limits her ability to perform sedentary work. The plaintiff points to no diagnosis of obesity[2], and no medical care provider diagnosing any limitation stemming from her weight. The mere possibility that the plaintiff's weight limited her is not grounds for relief, particularly when, as in this instance, the ALJ found the plaintiff capable of performing sedentary work.

The third and final claim for relief is that the ALJ erred in relying upon the Medical-Vocational Guidelines and, instead, should have relied upon the testimony of a vocational expert. As previously noted, a vocational expert testified at the hearing concerning the plaintiff's past relevant work, and answering some hypothetical questions. The vocational expert, however, was not questioned on whether the plaintiff, assuming her to have no significant nonexertional impairments, could perform the full range of sedentary work. The ALJ reached this conclusion without relying on the vocational expert's testimony.

The plaintiff urges that vocational expert testimony is necessary when nonexertional impairments are present. She claims she suffers from the nonexertional impairments of obesity, chest pain, heart problems, and, possibly, some mental impairment. The defendant counters that the ALJ properly discounted the plaintiff's subjective complaints regarding nonexertional impairments and therefore there was no error in relying on the Grids. We are guided on this issue by *McGeorge v. Barnhart*, 321 F.3d 766, 768 -769 (8th Cir. 2003):

---

[2] The plaintiff's weight seems to have varied during the time in question, as the medical records indicate she is 5'7" and weighed 190, 230, and 170 at different times in 2008. (Tr. 241, 249, 255).

> In other words, the law of this circuit states that "an ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines." *Thompson v. Bowen,* 850 F.2d 346, 349-50 (8th Cir.1988).

Using the language from *McGeorge*, two questions must be answered: one, did the ALJ find that the nonexertional impairments do not diminish the plaintiff's residual functional capacity to perform the full range of activities listed in the Guidelines?; and two, if the ALJ made such a finding, does the record support the ALJ's finding?

The first question is answered in the affirmative. A review of the ALJ's opinion reflects that he found the nonexertional impairments did not diminish the plaintiff's RFC to perform the full range of sedentary work. For example, the ALJ considered plaintiff's subjective allegations and found the "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment [to perform the full range of sedentary work]." (Tr. 13). To support his conclusion, the ALJ noted inconsistencies in the plaintiff's report of daily activities in her December 2008 report versus the testimony offered at the hearing. In addition, the ALJ reviewed the medical records and found no restrictions or limitations imposed therein. (Tr. 13-14).

The second question from the *McGeorge* case is whether the record supports the ALJ's findings concerning the nonexertional impairments. We find the record does support the ALJ's finding that the plaintiff's nonexertional impairments only minimally affect her ability to perform sedentary work. Substantial evidence of record exists to support this conclusion. It is particularly persuasive that no treating physician indicated that the nonexertional impairments required significant restrictions on the plaintiff's activities. In addition, the plaintiff testified to an over the

counter remedy (ibuprofen) to address any issues with these impairments. It is also noteworthy that these nonexertional impairments are alleged to be longstanding in nature[3], with no allegation of a recent increase in symptoms, with no increase in medication or in seeking medical care, and the plaintiff's past work record suggests that she was able to perform her past relevant work despite such impairments. Her work history shows work during the period from 1991 to 1997, then additional work from 2004 to 2008. (Tr. 102-103). The record supports the ALJ's reliance upon the Medical-Vocational Guidelines, as there is substantial evidence to show no significant restrictions on the plaintiff's ability to perform the full range of sedentary work. Based upon the foregoing, we find there is no merit in claim three.

In summary, for the reasons cited herein, we find no merit in the arguments advanced by the plaintiff.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED this   27    day of January, 2012.

　　　　　　　　　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

---

[3] Plaintiff testified that her left leg had "been swelling all my life." (Tr. 28).